SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
A Limited Liability Partnership
Including Professional Corporations
PAUL S. COWIE, Cal Bar No. 250131
BRIAN S. FONG, Cal Bar No. 262846
AMANDA E. BECKWITH, Cal Bar No. 312967
VICTORIA B. AYENI, Cal Bar No. 335233
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone: 415.434.9100
Facsimile: 415.434.3947
E mail pcowie@sheppardmullin.com
bfong@sheppardmullin.com
abeckwith@sheppardmullin.com
vayeni@sheppardmullin.com

Attorneys for Defendant AMN HEALTHCARE LABOR DISRUPTION INC.

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| HEATHER FRANKLIN, on behalf of herself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>AMN HEALTHCARE LABOR DISRUPTION INC.; and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No. '25CV3527 WQHVET<br><br>[San Diego County Superior Court Case No. 25CU056700C<br><br>**DEFENDANT AMN HEALTHCARE LABOR DISRUPTION INC.'S NOTICE OF REMOVAL OF CIVIL ACTION TO FEDERAL COURT PURSUANT TO THE CLASS ACTION FAIRNESS ACT 28 U.S.C. §§ 1332(d)(2) and 1453**<br><br>Complaint Filed: October 21, 2025<br>Trial Date: None Set |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HER ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant AMN Healthcare Labor Disruption, Inc. ("Defendant" or "AMN LD") hereby removes the above-entitled action, Case No. 25CU056700C, from the Superior Court of California, County of San Diego, to the United States District Court for the Southern District of California. This Court has original subject matter jurisdiction over Plaintiff Heather Franklin's ("Plaintiff") lawsuit under the Class Action Fairness Act of 2005, 28 U.S.C. §§ 1332(d)(2) and 1453, because minimum diversity exists and the amount in controversy exceeds $5,000,000. Accordingly, removal is proper based on the following grounds:

## I. CLAIMS AND PROCEDURAL HISTORY

1. On or about October 21, 2025, individually and on behalf of all other purportedly similarly situated non-exempt, hourly employees, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of San Diego, Case No. 25CU056700C (the "Complaint"). On November 11, 2025, Plaintiff served a copy of the Complaint, Summons, and Civil Case Cover Sheet on Defendant. Attached hereto as **Exhibits A–F** are true and correct copies of the Complaint, Summons, Civil Case Cover Sheet, Alternative Dispute Resolution Information packet served on Defendant, as well as the Notice of Case Assignment and Case Management Conference, and Proof of Service of Summons.

2. The Complaint asserts class claims for relief arising out of Plaintiff's alleged employment with AMN LD to replace striking healthcare workers at healthcare facilities in California. Plaintiff asserts class claims for: (1) failure to pay all wages owed under Labor Code §§ 200, 223, 226, 500, 1197, 1198, and the applicable California Industrial Welfare Wage Orders; (2) failure to pay overtime for all overtime hours worked under Labor Code §§ 200, 226, 500, 510, 1194, 1198, and the Applicable Wage Orders; (3) failure to pay minimum wages for all hours worked

under Labor Code §§ 1194, 1194.2, 1197 and the Applicable Wage Orders; (4) breach of contract; (5) failure to authorize and/or permit meal periods under Labor Code §§ 512, 226.7, and the Applicable Wage Orders; (6) failure to authorize and/or permit rest periods under Labor Code § 226.7 and the Applicable Wage Orders; (7) failure to reimburse all business-related expenditures under Labor Code § 2802; (8) failure to furnish complete and accurate itemized wage statements under Labor Code § 226(a) and the Applicable Wage Orders; (9) failure to timely pay all final wages under Labor Code §§ 201, 202, and 203; and (10) unfair competition under Business and Professions Code §§ 17200, *et. seq*.

3. Plaintiff seeks to represent a putative class of "[a]ll of Defendant's non-exempt employees who were assigned to work for any of its clients engaged in a labor dispute inside California during the Class Period."[1] (Compl. ¶ 35.) Plaintiff defines the class period as four years prior to the filing of this action, or October 21, 2021, to the present ("Class Period"). (Compl. ¶ 34.)

4. A copy of this Notice of Removal will be served on Plaintiff and filed with the Superior Court of California for the County of San Diego. **Exhibits A–F** contain all process, pleadings, and orders served on Defendant in accordance with 28 U.S.C. § 1446(a). No other proceedings have been held in this action.

## II. DIVERSITY JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

5. The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d)(2). As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3)

[1] Defendant does not admit that this class, or any putative class, is properly defined, or otherwise ascertainable.

the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

6. Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal. Defendant is only required to submit a "short and plain statement of the grounds for removal." 28 U.S.C. § 1446(a). A plausible allegation of the relevant jurisdictional facts is sufficient in a notice of removal. *Dart Cherokee*, 135 S.Ct. 547 at 554. Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations. *Id.*

## III. MINIMUM DIVERSITY EXISTS

7. CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state. *See* 28 U.S.C. § 1332(d).

8. For diversity purposes, a corporation is deemed to be a citizen of the state in which it has been incorporated and the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of a corporation's "principal place of business" and concluded that "'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

9. AMN LD is incorporated in the State of California with its principal place of business in Texas. AMN LD's corporate and executive officers are employed in Texas and its administrative functions (including operations and planning), are

conducted in Texas. Texas is also where the actual direction, control, and coordination for AMN LD take place. AMN LD's corporate headquarters in Texas is the actual center of direction, control and coordination of all major human resources and administrative functions; the respective corporate officers for these functions work in Texas and are responsible for developing policies and protocols for AMN LD's operations. AMN LD's "nerve center" is in Texas, rendering AMN LD a Texas citizen for purposes of diversity. These facts were true at the time the Complaint was filed and remain true today at the time of removal to federal court. Thus, AMN LD is deemed a citizen of California and Texas for the purposes of removal.

10. To establish citizenship for diversity purposes, a natural person must be both (a) a citizen of the United States, and (b) a domiciliary of one particular state. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994). According to Plaintiff's Complaint, Plaintiff Franklin resides in Ohio. (Compl. ¶ 6.) Additionally, as part of its core business, AMN LD recruits and hires healthcare professionals from all over the United States to staff hospitals during labor disputes between such a hospital and its employees' unions. Many of the putative class members reside in states other than California or Texas.[2] Therefore, at the date on which this civil action was filed, and at the time of this removal, at least one member of the putative class was not a citizen of California or Texas.

[2] According to home mailing address information provided by the putative class members when applying for employment with AMN LD, the putative class members reside in Alaska, Alabama, Arkansas, Arizona, California, Colorado, Connecticut, Washington D.C., Delaware, Florida, Georgia, Hawaii, Iowa, Idaho, Indiana, Illinois, Idaho, Kansas, Kentucky, Louisiana, Maine, Maryland, Massachusetts, Michigan, Minnesota, Missouri, Mississippi, Montana, North Carolina, North Dakota, Nebraska, Nevada, New Hampshire, New Jersey, New Mexico, New York, Ohio, Oklahoma, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Tennessee, Texas, Utah, Virginia, Washington, Wisconsin, West Virginia, and Wyoming.

11. The presence of "Doe" defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

## IV. THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

Defendant AMN LD employed approximately **9,900** putative class members who worked at least one day in California during the Class Period. Accordingly, the putative class meets CAFA's requirement of a class containing at least 100 members.

## V. THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

12. Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). "In measuring the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury [will] return[] a verdict for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F.

Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

13. As relevant here, AMN LD employs putative class members in temporary positions at hospitals in California that are experiencing an organized labor stoppage. Many putative class members have worked with AMN LD on multiple assignments, over multiple days during the Class Period, because they worked during more than one labor stoppage. However, in order to use a more conservative estimate, AMN LD only relies on the strike most recently worked by Plaintiff in October 2025. (Compl. ¶ 11.) According to AMN LD's information pertaining to this latest strike worked, there were approximately **3,000** total putative class members that worked the five-day strike.

14. During the Class Period, the putative class members earned an average of **$94.00** per hour. During the Class Period, Plaintiff and the putative class members typically worked shifts of **12** hours per day. Accordingly, on average, each putative class member earned **$1,316** per day ($94/hour x 8 hours + $141/hour x 4 hours) for each day the putative class member worked on assignment for AMN LD.

15. Plaintiff alleges that Defendant required Plaintiff and putative class members to use company-provided or company-directed transportation to and from their assigned healthcare facilities because, among other reasons, crossing active, or potential, picket lines without the protection of company-provided shuttles would seriously jeopardize their health and safety. (Compl. ¶ 14.) Plaintiff alleges that because they and the putative class members were not reimbursed for the cost of a vehicle that they would be required to rent in order to commute to work themselves, using company-provided transportation to get to and from jobsites was compulsory for the putative class members. (*Id.*) Plaintiff alleges that Defendant had a pattern and practice of not paying Plaintiff and the putative class members for their transportation time, and the associated wait time spent traveling at Defendant's direction. (Compl. ¶ 15.)

16. Without making any admission of liability or damages, based on Plaintiff's allegations that putative class members waited for company-provided transportation every day, used company-provided transportation to travel to assignments, and waited for other class members to arrive at the designated pick-up locations, and for purposes of this removal only, the calculations below assume putative class members typically had a total of two hours of unpaid straight time and two hours of unpaid overtime during each assignment. (*Id.* ¶ 15.)

17. Plaintiff also alleges that AMN LD failed to pay all promised non-discretionary bonuses depending on the assignment, and failed to take those into account for purposes of determining the overtime and double time rates of pay. (*Id.* ¶ 16.) Plaintiff further alleges that AMN LD contractually promised to provide guaranteed payments and/or non-discretionary bonuses if they fulfilled certain conditions, but "from time to time" failed to provide such payments and/or bonuses to Plaintiff and putative class members who had earned them, in breach of their contracts. (*Id.* ¶ 18-19.)

18. Plaintiff also alleges that they and the putative class members were not "authorized and/or permitted to take lawful meal or rest breaks under California law" and AMN LD failed to pay the required and proper break premiums owed. (*Id.* ¶ 20.) Plaintiff alleges that "[d]ue to the workload and high-pressure environment of the strike assignments, Plaintiff and other Strikebreakers were ***frequently*** unable to take uninterrupted, off-duty meal periods of at least 30-minutes and/or off-duty uninterrupted 10-minute rest periods for every four hours worked." (*Id.*) (Emphasis added.)

19. Plaintiff further alleges that AMN LD failed to reimburse herself and the putative class members for necessary business expenses including meals and incidentals while traveling on an assignment. (*Id.* ¶ 21.)

20. Without making any admission of liability or damages, with respect to any aspect of this case, or to the proper legal test(s) applicable to Plaintiff's

substantive and class allegations, and without waiving the right to compel Plaintiff's claims to binding individual arbitration, or any other affirmative defenses, the alleged amount in controversy in this class action exceeds, in the aggregate, $5,000,000.

21. **Plaintiff's Ninth Claim for Waiting Time Penalties Under Labor Code § 203:** Plaintiff alleges that she, and some members of the Class, have separated from Defendant as a result of being discharged or having voluntarily resigned their employment, and that AMN LD willfully failed to timely pay their final wages for all unpaid wages earned. (*Id.* ¶¶ 87-88.) Plaintiff alleges that AMN LD is required to compensate these employees for all their unpaid wages earned, and an additional penalty equal to the daily earnings of such employees up to an amount equal to those owed for 30 days of work. (*Id.*) AMN LD alleges there were at least **3,000** assignments worked by putative class members during the three-year period prior to the filing of the Complaint (during the October 2025 strike). Plaintiff alleges that not all separated members of the Class are owed waiting time penalties or that they are owed the full 30-day penalty because it is "unknown to Plaintiff" at this time whether AMN LD paid some of the separated putative class members all wages owed at separation or within 30 days of separation. (*Id.* ¶ 88.) However, based on Plaintiff's allegations that all putative class members were forced to travel each day and were not compensated for that time, were not compensated for their time spent completing orientation and/or modules, for purposes of removal only, Plaintiff really alleges a 100% violation rate, particularly when considering there are eight other causes of action. *See Jauregui v. Roadrunner Transportation Servs., Inc.*, 28 F.4th 989 (9th Cir. 2022). Nevertheless, using only a **10%** violation rate for the alleged waiting time penalties claim puts in controversy approximately **$11,844,000** ($1,316 per day x 30 days x 3,000 total employees worked x 10%). Consequently, AMN LD alleges that the amount placed in controversy by Plaintiff's class claims easily exceeds $5,000,000 based on the damages for waiting time penalties alone.

22. But even assuming otherwise, Plaintiff's alleged amount in controversy for all the claimed damages meets the required threshold necessary to support federal jurisdiction under CAFA, as set forth below.

23. Plaintiff's First Claim for Failure to Pay All Wages Owed, Second Claim for Failure to Pay Overtime, and Third Claim for Failure to Pay Minimum Wage: Plaintiff alleges AMN LD failed to pay Plaintiff and putative class members for their transportation time, and the associated wait time in the hotel lobby, despite being allegedly under Defendant's control during the entirety of that time. (Compl. ¶ 14.) Plaintiff also alleges that some of the unpaid time must have allegedly been paid at double-time rates given putative class members' long shifts. (*Id.* ¶ 49.) Plaintiff further alleges that she and other putative class members were not provided with work assignments for over 12 hours, and were required to wait in the hotel lobby for more than 12 hours with their luggage. (Compl. ¶ 11.) Should Plaintiff prevail on this claim for unpaid travel time on behalf of herself and the putative class members she seeks to represent, and based on the assumptions described above, unpaid straight time wages would amount to approximately $564,000 ($94/hour x 2 hours allegedly unpaid time per assignment worked x 3,000 putative class members) and approximately $846,000 ($141/hour average overtime rate x 2 hours of unpaid overtime x 3,000 putative class members).

24. Should Plaintiff prevail on her claim for waiting time in the hotel lobby, under Defendant's control, and conservatively estimating five hours of waiting time (based on Plaintiff's allegation of 12 hours of waiting time), Plaintiff puts an additional **$1,410,000** in controversy ($94/hour x 5 hours x 3,000 putative class members).

25. Plaintiff also alleges that AMN LD failed to pay putative class members for all hours spent in mandatory onboarding, training modules, and other pre-shift activities. (Compl. ¶ 15.) Based on AMN LD's records, putative class members spent, on average of at least 7 hours completing modules and at least 7 hours

completing orientation prior to beginning their assignment for the October 2025 strike. Thus, using a conservative estimate of only 7 hours unpaid modules and orientation, should Plaintiff prevail on this claim, unpaid orientation/module wages would amount to approximately **$1,974,000** ($94/hour x 7 hours allegedly unpaid x 3,000 putative class members who worked October 2025 strike). Thus, Plaintiff puts at least **$4,794,000** in controversy for her first three causes of action.

26. **Plaintiff's Fifth Claim for Failure to Provide Meal Periods:** Plaintiff alleges AMN LD "frequently" failed to provide putative class members with required meal periods without paying the requisite missed meal period premium of one additional hour of pay. (*Id.* ¶ 20.) California law requires employers to pay employees one additional hour of pay at the employees' regular rate of compensation for each workday a meal period that is required to be provided is not provided. Cal. Labor Code § 226.7. Assuming, conservatively, based on the allegations discussed above, that putative class members on average were not provided two meal periods during the one assignment that they worked and did not receive corresponding meal period premiums, should Plaintiff prevail on this claim on behalf of herself and putative class members, alleged missed meal period premiums would amount to approximately **$564,000** (**$94** average hourly pay x 2 missed meal periods during five-day strike x **3,000** putative class members).

27. **Plaintiff's Sixth Claim for Failure to Provide Rest Periods:** Plaintiff alleges AMN LD "frequently" failed to provide putative class members with rest periods without paying them the requisite missed rest period premium of one additional hour of pay. (*Id.* ¶ 20.) Plaintiff alleges that she and the putative class members occasionally worked in excess of four-hour work periods, or a fraction thereof, without being authorized or permitted to take their first, second, third, and/or fourth rest breaks. (*Id.* ¶ 72). California law requires employers to pay employees one additional hour of pay at the employees' regular rate of compensation for each workday a rest period that is required to be provided is not provided. Cal. Labor Code

§ 226.7. Assuming, conservatively, that putative class members typically were not provided two rest periods during each assignment and did not receive corresponding rest period premiums, should Plaintiff prevail on this claim on behalf of herself and putative class members, alleged missed rest period premiums would amount to approximately **$564,000** ($**94** average hourly pay x 2 missed meal periods during five-day strike x 2 missed rest periods per assignment x **3,000** total assignments worked).

28. Plaintiff's meal and rest period claims thus place at least another **<u>$1,128,000</u>** in controversy.

29. **Plaintiff's Eighth Claim for Failure to Furnish Accurate Wage Statements:** Plaintiff alleges that AMN LD knowingly and intentionally failed to provide to Plaintiff and putative class members accurate written wage statements "from time to time." (*Id.* ¶¶ 70-83). However, because Plaintiff alleges that <u>every</u> putative class member worked off the clock for travel time and modules/orientation (Compl. ¶ 15), Plaintiff really alleges a 100% violation rate for inaccurate wage statements. Plaintiff seeks damages of $50 for each putative class members' first inaccurate wage statement, and $100 for each subsequent inaccurate wage statement. (*Id.* ¶ 81). Assuming putative class members who worked the October 2025 strike were only issued one wage statement, approximately **3,000** wage statements would have been issued during the one-year period before the filing of the Complaint. Should Plaintiff prevail on this claim on behalf of herself and putative class members, and using a $50 penalty per wage statement, alleged damages would amount to approximately **$150,000** ($50 x 3,000 wage statements).

30. **Plaintiff's Claim for Attorneys' Fees:** For purposes of federal subject matter jurisdiction, "[t]he amount in controversy includes the amount of damages in dispute, as well as attorneys' fees, if authorized by statute or contract." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998). The Ninth Circuit has held "that attorneys' fees were properly included in the amount in controversy in a class

action." *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (abrogated on other grounds *by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013)). In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy. Plaintiff's causes of action permit Plaintiff to recover attorneys' fees. *See* Cal. Lab. Code §§ 226 & 1194; *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine."). Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark when calculating the attorneys' fees in controversy, including for claims arising under state law. *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 483 (2016) (approving percentage of recovery measure of fees in common fund cases). Therefore, should Plaintiff prevail on this claim, attorneys' fees would amount to **$4,479,000** (25% of the total of the amounts stated above).

31. Based on the foregoing, Defendant alleges that the amount placed in controversy by Plaintiff's class claims at the time of this removal (exclusive of interest and costs) is at least **$22,000,000**, which easily exceeds $5,000,000, based on reasonable assumptions. This conservative estimate also does not include Plaintiff's breach of contract claims, expense reimbursement claims, or unpaid bonus claims. As such, the amount in controversy necessary to support federal jurisdiction under the CAFA has been established.

## VI. NONE OF THE CAFA EXCEPTIONS APPLY

32. The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)–(5). However, none of these exceptions are applicable here.

33. The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed and the primary Defendant is a resident of that state. *See* 28 U.S.C. § 1332(d)(3). Here, of the **approximate 9,900** putative class members, less than 2,000 are California residents (less than **20%** of the total number of putative class members). Accordingly, *fewer than one-third* of the putative class members are California residents, and this discretionary exception does not apply. Similarly, the two exceptions under 28 U.S.C. § 1332(d)(4) also do not apply, because fewer than two-thirds of the putative class members are California residents.

34. Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or putative classes which number less than 100 in the aggregate. *See* 28 U.S.C. §§ 1332(d)(5)(A)–(B). Given that Defendant is not a governmental entity, and the proposed class well exceeds 100 members, these exceptions also do not apply.

## VII. TIMELINESS OF REMOVAL

35. Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 692 (9th Cir. 2005).

36. When a pleading or paper is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the 28 U.S.C. §

1446(b) 30-day windows do not begin to run. *Id.* at 692–95. "[N]otice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id.* at 694. This reasoning was confirmed in *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "Even if a defendant could have discovered grounds for removability through investigation, it does not lose the right to remove because it did not conduct such an investigation and then file a notice of removal within thirty days of receiving the indeterminate document."

37. It is well-settled that a pleading or paper that discloses grounds to remove on a basis other than CAFA does not start any deadline to remove under the jurisdiction conferred by CAFA. *See Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018) ("These general removal principles apply equally in the context of removals premised upon CAFA . . .'a defendant may remove a case from state court within thirty days of ascertaining that the action is removable under CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative basis for federal jurisdiction.'") (quoting *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180 (9th Cir. 2015)); *see also Castro v. ABM Industries, Inc.*, 2017 WL 4682816, at *3 (N.D. Cal. Oct. 19, 2017) (finding that defendant timely removed upon learning the amount in controversy was over $5 million from plaintiff's trial plan). *Jordan* also confirms that CAFA must be construed liberally in favor of removal. *Id.* at 1183–84.

38. *Roth* holds that the two 30-day windows in 28 U.S.C. § 1446(b) are not the exclusive times in which a defendant can remove. Thus, if a defendant never receives a pleading or other paper affirmatively disclosing the grounds for removal under CAFA, the defendant can remove under CAFA at any time. *Roth*, 720 F.3d at 1126 ("A CAFA case may be removed at any time, provided that neither of the two 30-day periods under § 1446(b)(1) and (b)(3) has been triggered."); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("[W]e will not 'charge

defendants with notice of removability until [they have] received a paper that gives them enough information to remove'"); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

39. The only papers that start the second 30-day window under 28 U.S.C. § 1446(b) are those received from other parties in the litigation. *Calkins v. Google, Inc.*, 2013 WL 3556042, at *3 (N.D. Cal. 2013) ("[T]he plain language of the statute is clear that 'other paper' refers to a document received from another person or party in connection with the litigation."); *see also Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016) ("Every circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper provided *by the plaintiff* to the defendant.") (original emphasis). That a defendant can discern or has discerned removability from its own records does not begin either of the non-exclusive 30-day windows for removal. *See Roth*, 720 F.3d at 1126; *see also Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *4 (C.D. Cal., 2015) ("The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law.") The Ninth Circuit in *Harris*, 425 F.3d at 495, adopted the following rule from the Fourth Circuit: "We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents *exchanged in the case by the parties* to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." (quoting *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added).

40. None of Plaintiff's pleadings in this action, nor any other paper which Plaintiff served or delivered to Defendant, affirmatively disclosed a ground for CAFA removal. Thus, Defendant never received any pleading, motion, order, or other paper affirmatively disclosing that the amount in controversy in this action exceeds $5,000,000. Accordingly, the second 30-day window under 28 U.S.C. § 1446(b) has not yet started, and for the foregoing reasons, this notice of removal is timely and otherwise procedurally proper.

## VIII. VENUE

Venue lies in the Southern District of California pursuant to 28 U.S.C. §§ 1441, 1446(a), and 84(d). This action originally was brought in the Superior Court of the State of California, County of San Diego.

## IX. NOTICE OF REMOVAL

41. This Notice of Removal will be promptly served on Plaintiff and filed with the Clerk of the Superior Court of the State of California in and for the County of San Diego.

42. In compliance with 28 U.S.C. § 1446(a), true and correct copies of all "process, pleadings and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as the following exhibits, including the Complaint **(Exhibit A)**; Summons (**Exhibit B**); Civil Case Cover Sheet (**Exhibit C**); Alternative Dispute Resolution Information packet (**Exhibit D**); Notice of Case Assignment and Case Management Conference (**Exhibit E**); and Proof of Service of Summons (**Exhibit F**).

43. Because this Court has original jurisdiction under CAFA, 28 U.S.C. §§ 1332(d)(2), removal of this action is proper pursuant to 28 U.S.C. §§ 1332(d)(2), 1441, 1446 and 1453.

## X. JOINDER

Defendant is not aware of any other defendant that exists and who has been named in the Complaint.

## XI. RESERVATION OF RIGHTS

44. This Notice of Removal is filed subject to and with full reservation of all rights, including but not limited to defenses and objections to venue, improper service, and personal jurisdiction. Defendant also reserves its right to file a Motion to Compel Arbitration. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case, and all defenses, motions, and pleas are expressly reserved.

45. WHEREFORE, Defendant requests the above action pending before the Superior Court of the State of California for the County of San Diego be removed as required by the CAFA to the United States District Court for the Southern District of California.

Dated: December 11, 2025

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By *_/s/ Amanda E. Beckwith_*

PAUL S. COWIE
BRIAN S. FONG
AMANDA E. BECKWITH
VICTORIA B. AYENI
Attorneys for Defendant AMN HEALTHCARE LABOR DISRUPTION, INC.